IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTA REGUSTERS,<br><br>   *Plaintiff,*<br><br> v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 25-865 |

Pappert, J.                              November 12, 2025

### MEMORANDUM

  Donta Regusters sued the City of Philadelphia and three detectives alleging federal claims under 42 U.S.C. § 1983 and state claims under Pennsylvania tort law. One detective, Angela Gaines, moves for judgment on the pleadings. Regusters fails to state claims against Gaines, but the Court will allow him to amend some of his claims and deny as moot Gaines's motion.

I

  In the early morning hours on August 28, 2010, Johnathan Wilson was sitting in his car near the corner of 26th and Silver Streets in Philadelphia, when gunfire erupted. (Compl. ¶¶ 17–19, Dkt. No. 1.) When officers arrived on scene, they found Wilson's car wrapped around a telephone pole. (*Id.* ¶¶ 18–19.) A bullet had struck him, leaving him unconscious and bleeding. (*Id.* ¶ 19.) He later died. (*Id.* ¶ 20.)

  Three detectives—Philip Nordo, Ronald Dove and Angela Gaines—led the investigation. (*Id.* ¶¶ 13–15.) Shortly after the shooting, the detectives received two anonymous calls from the same person, learning the following: a man named "Dante" had killed Wilson; Wilson died because of an ongoing dispute between Dante and

1

another man named Charles Britten; and nearly two weeks before Wilson's death, on August 16, Dante, Britten and two other men, Kenneth Richardson and John Jones, got into an argument that escalated into a shootout. (*Id.* ¶¶ 27–31.) Ballistics evidence confirmed that one of the guns used in the August 28 shooting that led to Wilson's death was also used in the August 16 shooting between Dante, Britten, Richardson and Jones. (*Id.* ¶ 32.)

With this information, the detectives interviewed Jones and Britten. Dove and Gaines interviewed Jones. (*Id.* ¶ 33.) Jones said Donta Regusters and another man, Kyle Pelzer, shot at him on August 16. *See* (*id.* ¶ 36). He then said he heard from the "streets" that Regusters was the person who had killed Wilson on August 28. (*Id.*) Jones also identified Regusters by photo. (*Id.*)

A few days later, Nordo had an "off-the-record discussion" with Britten, for which Gaines was present. (*Id.* ¶¶ 39–40.) Britten said that he was standing near 26th and Silver in the early morning hours on August 28 with his friend, Edward Humphrey, when Regusters and Pelzer rode up on bikes and started shooting at them. *See* (*id.* ¶¶ 44–49). He returned fire. *See* (*id.* ¶¶ 44, 47). After learning this, Nordo and Gaines spoke with Humphrey. (*Id.* ¶¶ 49–50, 52.) Humphrey eventually signed a statement indicating that Regusters and Pelzer shot at him on August 28. *See* (*id.* ¶ 56).

Gaines submitted an affidavit of probable cause containing the witness statements by Jones, Britten and Humphrey. (*Id.* ¶ 57.) A warrant for Regusters's arrest was issued, *see Commonwealth v. Regust[e]rs*, No. 3113 EDA 2012, 2013 WL

11250378, at *2 (Pa. Super. Ct. Nov. 13, 2013), and after a preliminary hearing, the state court held him on several charges, *see* (Compl. ¶ 59).

Regusters was tried for killing Wilson and related offenses in March and April of 2012. *Regust[e]rs*, 2013 WL 11250378 at *2. The government's theory was that Humphrey and Britten were on the corner of 26th and Silver, and with Wilson sitting in his car nearby, Regusters and Pelzer rode up on bikes and began shooting. Britten ducked behind a car and returned fire; Regusters and Pelzer continued to shoot at Britten, and in the process, shot Wilson. Wilson tried to escape, but lost control of his car, crashed into a telephone pole and later died. *Id.* *1–2.

The prosecution "relied" on the statements by Britten and Humphrey. (Compl. ¶ 63.) Britten could not testify at trial because he had been killed in an unrelated shooting. (*Id.* ¶ 65.) Thus, the statement he gave to Nordo and Gaines and a statement he gave at Regusters's preliminary hearing were introduced. (*Id.* ¶¶ 63, 65.) At the preliminary hearing, Britten recanted his earlier statement, saying he did not have "any knowledge of who killed Wilson." (*Id.* ¶ 66.) When asked about the earlier statement, Britten testified that while he made it, "each answer he gave detailing the shooting of Wilson was a lie." (*Id.* ¶ 67.) He said the police had "made promises" in return for his statement, (*id.* ¶ 68), specifically that he wouldn't be charged for having a gun on the night in question. (*Id.*) The Commonwealth never charged Britten. (*Id.*)

Humphrey testified at trial. He claimed his statement implicating Regusters was false and that he had been coerced to give it. (*Id.* ¶ 70.) He also said detectives threatened to keep him for multiple days, he spent "close to a day" with the detectives,

3

and the detectives did not feed him. (*Id.*) Humphrey also testified that Nordo promised to get him a security job if he signed a statement. (*Id.* ¶ 71.)

The jury nonetheless convicted Regusters of first-degree murder, attempted murder and aggravated assault, conspiracy to commit murder and criminal possession of a firearm. (*Id.* ¶ 61.) The trial court sentenced him to life in prison. (*Id.* ¶ 86.) In the years that followed, Regusters filed two petitions for post-conviction relief in state court. (*Id.* ¶¶ 89–90.) Eventually, in June of 2023, the Philadelphia District Attorney's Office responded to one of the petitions, arguing that Regusters's convictions should be vacated because the prosecution failed to turn over evidence that Nordo had engaged in police-related misconduct in other cases. (*Id.* ¶ 91); *see* (Commonwealth's Answer to Post Conviction Relief Act Petition at 1–40, Dkt. No. 28-1).[1] In August of 2023, a Pennsylvania state court vacated Regusters's convictions. (Compl. ¶¶ 1, 92.) All charges against him were ultimately dismissed. (*Id.* ¶ 92.)

Regusters now asserts claims against Nordo, Dove and Gaines under § 1983 for malicious prosecution, civil conspiracy and failure to intervene. He also alleges claims against the detectives under Pennsylvania law for malicious prosecution and civil conspiracy. Lastly, he asserts a *Monell* claim against the City of Philadelphia alleging it had policies or customs of coercing witnesses, fabricating evidence and withholding exculpatory evidence.

---

[1]   The Commonwealth's Answer appears to have formed the basis of Regusters's Complaint, as the two documents contain nearly identical factual statements. The Complaint, however, adds details about Gaines's participation in the investigation that the Answer does not contain. For example, while the Answer says that Nordo had an informal conversation with Britten, the Complaint adds that Gaines was present for this discussion.

II

A court evaluating a motion for judgment on the pleadings under Rule 12(c) must follow the "same standards" that govern a motion to dismiss a complaint under Rule 12(b)(6). *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotation marks and citation omitted). Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff must allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129–30 (3d Cir. 2010). The next step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 681–82. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). And in gauging the plausibility of a claim, the Court must accept as true all well-

pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

III

A

Regusters primarily seeks to hold Gaines liable for malicious prosecution under the Fourth Amendment. (Compl. ¶¶ 130–38.)[2] To state a claim for malicious prosecution, Regusters must show (1) Gaines initiated a criminal proceeding, (2) she did so without probable cause, (3) she acted maliciously or for a purpose other than bringing him to justice, (4) he was seized and (5) the criminal proceeding ended in his favor. *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014). Regusters argues that Gaines's probable-cause affidavit contained statements she knew to be false and omitted important facts, resulting in "an arrest and prosecution without probable cause." (Compl. ¶¶ 57–58, 132.) This argument implicates the first and second elements of his malicious prosecution claim.

1

A detective may be responsible for initiating a criminal proceeding if she includes knowingly false information in, or omits important facts from, her probable-cause affidavit. *Gallo v. City of Philadelphia*, 161 F.3d 217, 220 n.2 (3d Cir. 1998). The detective must have "influenced" the "decision" to initiate the proceedings. *Halsey*, 750 F.3d at 297; *see also* 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and*

---

[2] To the extent Regusters asserts a malicious prosecution claim under the Fourteenth Amendment, *see* (Compl. ¶ 131), qualified immunity bars it, *see Hicks v. City of Philadelphia*, 783 F. Supp. 3d 834, 850 (E.D. Pa. 2025) (explaining there is no clearly established Fourteenth Amendment right to be free from malicious prosecution).

6

*Defenses* § 3.18[A] (4th ed. 2024) (explaining that the knowingly false information or omitted facts must have had "a significant impact on the decision to prosecute").

Regusters first claims Dove and Gaines engaged in "improper and suggestive police techniques" when they interviewed Jones. (Compl. ¶ 34.) They allegedly told Jones "in a coercive manner" to identify Regusters as the shooter, provided him information they had received from the anonymous caller and "heavily suggested" that Jones identify Regusters in a photo array. (*Id.* ¶ 35.) Jones signed a written statement implicating Regusters, which he later said was false. (*Id.* ¶¶ 36–37.)

These allegations do not permit the Court to draw the inference that Gaines included knowingly false information in the affidavit. Coerced statements are not necessarily false. A coerced statement is a statement "that a witness is forced by improper means to give." *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014). The statement "may be true or false." *Id.* A known false statement, by contrast, is a statement that is "made up"—it is "known to be untrue by the witness and by whoever cajoled or coerced the witness to give it." *Id.* Here, Regusters alleges *no* facts to support Gaines knew Jones was making a false statement at the time of his interview.

Regusters next alleges Nordo had a discussion with Britten, for which Gaines was present. (Compl. ¶ 40.) Nordo purportedly told Britten "in a coercive manner" to identify Regusters as the shooter, provided him information he had received from the anonymous caller and "heavily suggested" that Britten identify Regusters in a photo array. (*Id.* ¶¶ 41–42.) Britten allegedly implicated himself in the shooting and Nordo and Gaines attempted to use this information as leverage to coerce Britten to make claims against Regusters. (*Id.* ¶¶ 44–45.) Regusters also claims Nordo promised

7

Britten he would not face charges for his participation in the shooting if he cooperated. (*Id.* ¶¶ 60, 68.) Britten implicated Regusters, was never charged and later recanted his statement. (*Id.*) Again, the gist of these allegations is that Nordo and/or Gaines used coercive techniques—and made promises of leniency—during the Britten interview. None of this, however, permits the Court to infer Gaines included Britten's statement in her affidavit knowing it was false.

Finally, Regusters alleges Nordo and Gaines engaged in "improper and suggestive police techniques" when they interviewed Humphrey. (*Id.* ¶ 53.) They allegedly coerced Humphrey to identify Regusters from a photo array and provide a written statement implicating Regusters. (*Id.* ¶ 55.) Humphrey later testified at trial he had been coerced by the police and said the police threatened to hold him for multiple days, didn't feed him for the day he was actually held, and that Nordo promised to get him a job in exchange for his cooperation. *See* (*id.* ¶¶ 53–57, 70–71). Again, Regusters claims Nordo and Gaines coerced Humphrey to identify Regusters. Nothing shows Gaines knew Humphrey did so falsely.

Regusters also claims Gaines omitted important facts from her probable-cause affidavit, which, in turn, influenced the prosecutor's decision to bring charges. (*Id.* ¶ 132.) He suggests Gaines failed to include in the affidavit that she, Nordo and Dove used coercive tactics to obtain the statements by Jones, Britten and Humphrey. *See* (*id.* ¶ 58). Regusters fails to allege Gaines omitted important facts about the Jones and Britten interviews. He broadly alleges Gaines and/or Nordo coerced Jones and Britten to implicate him in the Wilson killing. But his allegations are conclusory, failing to identify *any* particular coercive tactics the detectives used during the interviews.

8

Regusters next alleges Nordo and Gaines interviewed Humphrey, who later testified at trial the detectives had coerced him to identify Regusters. He also claims Humphrey said the police threatened to hold him for multiple days, didn't feed him for the day he was actually held, and that Nordo promised to get him a job in exchange for his cooperation. (*Id.* ¶¶ 53–57, 70–71.) These allegations suffice, at this stage, to plausibly show Gaines omitted facts from the affidavit, which influenced the prosecutor's decision to bring charges. *Halsey*, 750 F.3d at 297.

2

Even if Gaines initiated the criminal proceeding, Regusters still must allege sufficient facts to show she did so without probable cause. *Est. of Smith v. Marasco*, 318 F.3d 497, 521–22 (3d Cir. 2003). Probable cause "exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). Regusters argues there was no probable cause to support the first-degree murder charge. *See* (Compl. ¶ 131). Because a judge issued an arrest warrant for Regusters based on Gaines's probable-cause affidavit, Regusters must show two things. *Pinkey v. Meadville*, 95 F.4th 743, 749 (3d Cir. 2024). First, he must show Gaines "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for [the] warrant." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Second, he must show those false statements or omissions were "material, or necessary, to the finding of probable cause." *Id.*

9

As explained, Regusters alleges sufficient facts to show Gaines made "omissions" in applying for the warrant—specifically, that she and Nordo used coercive techniques to obtain the statement by Humphrey. *See supra* Part III.A.1. The only question is whether this omission was "necessary" to the state court's probable-cause finding. *Sherwood*, 113 F.3d at 399.

To answer this question, the Court must "reconstruct" the affidavit by inserting the "facts" "omitted." *Pinkey*, 95 F.4th at 749 (internal quotation marks and citation omitted). The Court must then ask whether "the revised facts" would have sufficed "to warrant a reasonable person to believe" that Regusters had committed first-degree murder. *Id.*

The omitted facts about the Humphrey interview would have alleged that Nordo and Gaines used coercive techniques in the course of getting Humphrey to implicate Regusters. Assuming this would have made Humphrey's statement unreliable, *see id.*, the affidavit would still establish probable cause if other evidence sufficed to warrant a reasonable officer to believe Regusters committed first-degree murder.

The anonymous caller, the ballistics evidence, and the statements by Jones and Britten supported probable cause. Taken together, this evidence showed that Humphrey and Britten were at the corner of 26th and Silver in the early morning hours on August 28, 2010; that Wilson was sitting in his car nearby; that Regusters and Pelzer rode up to the corner on bikes and began shooting at Britten and Humphrey; that Britten ducked behind a car and returned fire; that Regusters and Pelzer continued to shoot at Britten, and in the process, shot Wilson; that Wilson tried to escape, but lost control of his car and crashed into a telephone pole; that Wilson later

10

died; that Regusters and Pelzer shot at Britten because of an ongoing dispute; and that Regusters and Pelzer shot at Britten nearly two weeks before Wilson's death. Regusters has not alleged sufficient facts to show that Gaines knew the statements by Jones or Britten were false, or that an ordinary prudent officer would have distrusted them. This evidence suffices to support a probable-cause finding for first-degree murder in Pennsylvania. *See Regust[e]rs*, 2013 WL 11250378, at *3–8 (explaining the evidence supported that Regusters conspired with someone to kill Britten, that Regusters and his co-conspirator shot at Britten and in so doing killed Wilson, that Regusters's intent to kill Britten transferred to Wilson, and that Regusters could be found guilty even if his co-conspirator was the one who killed Wilson).

Regusters's malicious prosecution claim under Pennsylvania law has four elements: (1) Gaines initiated a criminal proceeding, (2) she did so without probable cause, (3) she acted maliciously or for a purpose other than bringing him to justice and (4) the criminal proceeding ended in his favor. *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. Super. Ct. 1988). Because Regusters fails to allege sufficient facts to show a lack of probable cause, he cannot state a claim for malicious prosecution under Pennsylvania law.

B

Regusters next alleges civil conspiracy. (Compl. ¶¶ 139–48.) To state such a claim under § 1983, he must show (1) two or more persons agreed to deprive him of a federal constitutional right, (2) one or more of the conspirators performed an overt act to further the conspiracy and (3) the overt act deprived him of the right. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018). Regusters fails to satisfy

the third element because he does not allege "an actual underlying constitutional violation." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020). He alleges the detectives "acted in concert" to "deprive" him of his right to be free from "malicious prosecution." (Compl. ¶ 140.) But as explained, Regusters fails to allege sufficient facts to show the criminal proceeding was initiated without probable cause.

Regusters's conspiracy claim under Pennsylvania law fails for similar reasons. Here he must allege (1) two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means, (2) a conspirator performed an overt act in furtherance of the conspiracy and (3) legal damage. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). But "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987).

Regusters does not have a "cause of action for a particular act," so he cannot show a "cause of action for civil conspiracy to commit that act." *Id.* He alleges Gaines, Nordo and Dove conspired to commit "malicious prosecution." (Compl. ¶ 172.) But as explained, Regusters fails to state a claim for malicious prosecution, meaning he cannot state a claim for conspiracy to commit malicious prosecution. *See, e.g.*, *Fiedler v. Spencer*, 231 A.3d 831, 838–39 (Pa. Super. Ct. 2020) (holding that because a plaintiff "failed to state a claim for tortious interference" the plaintiff could not "sustain a cause of action for conspiracy to commit that act").

C

Lastly, Regusters asserts claims against Gaines for "failure to intervene" to "prevent his false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law." (Compl. ¶ 150.)

Qualified immunity—which shields a police officer from money damages (and litigation)—bars these claims. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To overcome qualified immunity, Regusters must show that Gaines violated a constitutional right and that the unconstitutionality of her conduct was clearly established when she acted. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Regusters cannot show Gaines violated clearly established law. Though the Third Circuit Court of Appeals has "recognized a right to have a government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention," the Court has "since concluded that" its "precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023). Thus, it was not clearly established in 2012 that Regusters had a stand-alone right to intervention by a police officer to prevent false arrest, malicious prosecution, false imprisonment or deprivation of liberty without due process.

IV

Regusters asks for leave to amend his complaint. A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). If "a civil-rights complaint fails to state a claim, a district court must grant leave to amend the complaint unless amendment would be futile or inequitable." *Vorchheimer v.*

13

*Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if no new facts could fix the original complaint's problems. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Amendment is inequitable if the plaintiff unduly delays, shows bad faith, or if amendment would unfairly prejudice the defendant. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Regusters may amend his malicious prosecution and civil conspiracy claims under federal and state law, as amendment would neither be futile nor inequitable. He could allege new facts to fix the problems with these claims. *Jablonski*, 863 F.2d at 292. Though Regusters could have moved to amend earlier, he did not *unduly delay* in making his request. Plus, delay "alone" is "insufficient" to deny amendment. *Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). The Court cannot say Regusters has acted in bad faith. And amendment would not unfairly prejudice Gaines.

Regusters may not amend his failure to intervene claims because amendment would be futile. He can allege no facts which could overcome qualified immunity.

*    *    *    *    *

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

14