IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTA REGUSTERS, *Plaintiff,* v. CITY OF PHILADELPHIA, et al., *Defendants.* | CIVIL ACTION NO. 25-865 |

**Pappert, J.**                                                                                                                         February 12, 2026

## MEMORANDUM

Donta Regusters sued the City of Philadelphia and three detectives alleging federal claims under 42 U.S.C. § 1983 and state claims under Pennsylvania tort law. One detective, Angela Gaines, previously moved for judgment on the pleadings. The Court allowed Regusters to amend his complaint and denied as moot Gaines's motion. Regusters filed his amended complaint and Gaines again moves for judgment on the pleadings. The Court grants the motion and enters judgment for Gaines on Regusters's civil conspiracy and failure-to-intervene claims but denies the motion with respect to the malicious prosecution claims.

I

In the early morning hours of August 28, 2010, Johnathan Wilson was sitting in his car near the corner of 26th and Silver Streets in Philadelphia when gunfire erupted. (Am. Compl. ¶¶ 17–19, Dkt. No. 33.) Officers arrived on scene and found Wilson's car wrapped around a telephone pole. (*Id.* ¶¶ 18–19.) Wilson had been shot and later died. (*Id.* ¶¶ 19–20.)

Three detectives—Philip Nordo, Ronald Dove and Angela Gaines—investigated Wilson's killing. (*Id.* ¶¶ 13–15.) Shortly after the shooting, the detectives heard from an anonymous caller that a man named Dante had killed Wilson. (*Id.* ¶ 28.) The caller said Wilson's death was the result of an ongoing dispute between Dante and another man named Charles Britten. (*Id.* ¶ 29.) The caller further said that sometime before Wilson's death, Dante, Britten and two other men, Kenneth Richardson and John Jones, got into an argument that escalated into a shootout. (*Id.* ¶¶ 29–30.) Ballistics evidence confirmed one of the guns used in the August 28 shooting that led to Wilson's death was also used in the prior shooting between Dante, Britten, Richardson and Jones. (*Id.* ¶ 34.) The detectives learned the prior shooting happened on August 16, twelve days before Wilson's death. (*Id.* ¶ 33.)

With this information, the detectives interviewed Jones and Britten. Dove and Gaines interviewed Jones. (*Id.* ¶ 35.) Jones said Donta Regusters and another man, Kyle Pelzer (nicknamed "Kizzy"), shot at him on August 16. *See* (*id.* ¶ 36–38). He then said he heard from the "streets" that Regusters killed Wilson on August 28. (*Id.* ¶ 38.) Jones identified Regusters's picture. (*Id.*)

A few days later, Nordo interviewed Britten with Gaines present. (*Id.* ¶¶ 42–43.) Britten said he was standing near 26th and Silver in the early morning hours on August 28 with his friend, Edward Humphrey, when Regusters and Pelzer rode up on bikes and started shooting at them. *See* (*id.* ¶¶ 50–53). He returned fire. *See* (*id.* ¶ 51). After learning this, Nordo and Gaines spoke with Humphrey. (*Id.* ¶ 54.) Humphrey eventually signed a statement saying Regusters and Pelzer shot at him on August 28. *See* (*id.* ¶ 62).

Gaines submitted an affidavit of probable cause containing only the Jones, Britten and Humphrey statements. (*Id.* ¶¶ 64–65.) A warrant for Regusters's arrest was then issued. *See Commonwealth v. Regust[e]rs*, No. 3113 EDA 2012, 2013 WL 11250378, at *2 (Pa. Super. Ct. Nov. 13, 2013). In March and April of 2012, Regusters was tried for killing Wilson and related offenses. *Id.* The government argued Humphrey and Britten were on the corner of 26th and Silver, and with Wilson sitting in his car nearby, Regusters and Pelzer rode up on bikes and began shooting. Britten ducked behind a car and returned fire. Regusters and Pelzer continued to shoot at Britten, and in the process, shot Wilson. Wilson tried to escape, but lost control of his car, crashed into a telephone pole and later died. *Id.* *1–2.

The prosecution relied entirely on the statements by Britten and Humphrey. (Am. Compl. ¶ 74.) Britten had been killed in an unrelated shooting by the time of trial. (*Id.* ¶ 78.) But the statement he gave to Nordo and Gaines and a statement he gave at Regusters's preliminary hearing were introduced at trial. (*Id.* ¶¶ 74, 78.) At the preliminary hearing, Britten recanted his earlier statement, saying he did not know who killed Wilson. (*Id.* ¶ 79.) When asked about the earlier statement, Britten testified that "any claim in [his] statement implicating [Regusters] was a lie." (*Id.* ¶ 80.) He said the detectives had "promised him leniency in connection with his possession of a firearm" in return for his statement. (*Id.*)

Humphrey testified at trial. He said he did not see who killed Wilson. (*Id.* ¶ 82.) He claimed his statement implicating Regusters was a "lie" and that he had been coerced into giving it. (*Id.* ¶ 83.) He said detectives threatened to keep him for multiple days and didn't feed him during his prolonged interview. (*Id.* ¶ 84.)

3

Humphrey also testified Nordo promised to get him a job and arrange his release from a drug treatment facility if he signed a statement. (*Id.* ¶¶ 85–86.)

The jury nonetheless convicted Regusters of first-degree murder, attempted murder and aggravated assault, conspiracy to commit murder and criminal possession of a firearm. (*Id.* ¶ 100.) The court sentenced him to life in prison. (*Id.* ¶ 101.) In the years that followed, Regusters filed two petitions for post-conviction relief in state court. (*Id.* ¶¶ 104–105.) Eventually, the Philadelphia District Attorney's Office responded to one of the petitions, arguing Regusters's convictions should be vacated because the prosecution failed to turn over evidence that Nordo had engaged in police-related misconduct in other cases. (*Id.* ¶ 106.) In August of 2023, a Pennsylvania state court vacated Regusters's convictions. (*Id.* ¶ 107.) All charges against him were ultimately dismissed. (*Id.* ¶ 108.)

Regusters now asserts claims against Gaines under § 1983 for malicious prosecution, civil conspiracy and failure to intervene. He also alleges malicious prosecution and civil conspiracy under Pennsylvania law.

II

A court evaluating a motion for judgment on the pleadings under Rule 12(c) must follow the same standards that govern a motion to dismiss a complaint under Rule 12(b)(6). *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff must allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in

determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010).  The next step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 681–82.  Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  And in gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff and draw reasonable inferences from them.  *Connelly*, 809 F.3d at 786 n.2.

### III

#### A

Regusters primarily seeks to hold Gaines liable for malicious prosecution under the Fourth Amendment.[1]  To state such a claim, Regusters must show (1) Gaines initiated a criminal proceeding, (2) she did so without probable cause, (3) she acted maliciously or for a purpose other than bringing him to justice, (4) he was seized and

---

[1] Regusters stipulates that qualified immunity bars his malicious prosecution claim under the Fourteenth Amendment.

(5) the criminal proceeding ended in his favor. *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014). Regusters argues no probable cause supported his first-degree murder charge because Gaines omitted certain information from her probable-cause affidavit. (Am. Compl. ¶¶ 65–66, 148.)

Probable cause "exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). Because a judge issued an arrest warrant for Regusters based on Gaines's probable-cause affidavit, Regusters must show two things. *Pinkney v. Meadville*, 95 F.4th 743, 749 (3d Cir. 2024). First, that Gaines "knowingly . . ., or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for [the] warrant." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Second, that the statements or omissions were "material, or necessary, to the finding of probable cause." *Id.*

1

Regusters contends Gaines, with a reckless disregard for the truth, failed to disclose the tactics she, Dove and Nordo used when they interviewed Jones, Britten and Humphrey. A detective makes a reckless omission when she "withholds a fact in [her] ken that any reasonable person would have known that this was the kind of thing the judge would wish to know" in determining probable cause. *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (citation omitted and modified). The omitted information must be relevant to the probable-cause determination. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 (3d Cir. 2016).

Regusters fails to show Gaines recklessly omitted from her affidavit facts about Jones's interview. He alleges Gaines and Dove engaged in improper tactics during this interview and coerced Jones to implicate him in Wilson's killing. *See* (Am. Compl. ¶¶ 36–37). But these allegations are conclusory, failing to identify any particular tactics the detectives used during the interview.

Regusters does, however, allege sufficient facts to show Gaines made reckless omissions about the Britten and Humphrey interviews. Regusters alleges Nordo "telegraphed" a pre-determined theory of the case to Britten, telling him Regusters killed Wilson. *See* (*id.* ¶ 47). Britten implicated himself in the August 28 shooting, and Nordo and Gaines then attempted to coerce Britten to identify Regusters. (*Id.* ¶¶ 48–49.) Specifically, Nordo explained to Britten he had committed a crime and suggested he could be prosecuted for his involvement in Wilson's killing but promised him he would not face charges if he cooperated. *See* (*id.* ¶¶ 49, 80). He then told Britten to identify Regusters. (*Id.* ¶ 47.) Regusters alleges Gaines's affidavit failed to include these details. (*Id.* ¶ 66.)

Next, Humphrey testified at trial Nordo threatened to hold him for multiple days, didn't feed him during his prolonged interview and promised to get him a security job in exchange for his cooperation. *See* (*id.* ¶¶ 53–57, 70–71). He also said Nordo promised to get him out of a drug treatment facility if he cooperated. (*Id.* ¶ 85.) Nordo and Gaines then allegedly pressured Humphrey to identify Regusters from a photo array and provide a written statement implicating Regusters. (*Id.* ¶ 55.) Again, Regusters alleges Gaines's affidavit failed to include these details. (*Id.* ¶ 66.)

7

These allegations suffice to plausibly show Gaines omitted relevant information from her probable-cause affidavit. Britten and Humphrey were at the scene of Wilson's death and implicated Regusters. Witness identifications must be reliable to establish probable cause. *See Pinkney*, 95 F.4th at 749. Thus, a judge would want to know about the tactics Nordo used to obtain Britten's and Humphrey's statements as that information was relevant to their reliability.

2

The omitted information must have been "material, or necessary, to the finding of probable cause." *Sherwood*, 113 F.3d at 399. To decide whether the omissions were material, the Court must first "reconstruct" the affidavit by inserting the omitted facts. *Pinkney*, 95 F.4th at 749 (citation omitted). The Court must then ask whether the revised affidavit would have sufficed to warrant a reasonable person to believe Regusters had committed first-degree murder. *Id.*

Regusters alleges Gaines's affidavit included only the statements by Jones, Britten and Humphrey. (Am. Compl. ¶ 65.) Of the three, Britten and Humphrey witnessed the August 28 shooting and implicated Regusters in Wilson's death. But a witness identification satisfies probable cause only if it is reliable. *Pinkney*, 95 F.4th at 749. After the Court includes Nordo's tactics during the Britten and Humphrey interviews, the ultimate question is whether those tactics plausibly establish that their statements were unreliable. Regusters contends they do. *See* (Pl.'s Resp. in Opp'n to Mot. to Dismiss at 11, Dkt. No. 39) (arguing the "omit[ed] . . . unlawful tactics . . . rendered [the witness statements] . . . unreliable"). The City, however, did not address this specific argument and the Court may conclude Regusters alleges sufficient facts to

show Britten's and Humphrey's statements were unreliable. He thus alleges sufficient facts to show a lack of probable cause.[2]

Regusters's malicious prosecution claim under Pennsylvania law survives for similar reasons. He must allege four elements: (1) Gaines initiated a criminal proceeding, (2) she did so without probable cause, (3) she acted maliciously or for a purpose other than bringing him to justice and (4) the criminal proceeding ended in his favor. *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. Super. Ct. 1988). Because the Court finds at this stage that Regusters alleges sufficient facts to show a lack of probable cause, he plausibly states a claim for malicious prosecution under Pennsylvania law.

B

Regusters next alleges civil conspiracy. To state such a claim under § 1983, he must show (1) two or more persons agreed to deprive him of a federal constitutional right, (2) one or more of the conspirators performed an overt act to further the conspiracy and (3) the overt act deprived him of the right. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018). Regusters alleges the detectives conspired to maliciously prosecute him.[3]

---

[2] Jones did tell the detectives that he heard from the streets that Regusters killed Wilson. But rumor alone is insufficient to establish probable cause. *Livers v. Schenck*, 700 F.3d 340, 358 (8th Cir. 2012).

[3] Regusters alleges in his Amended Complaint that Gaines conspired with other detectives to maliciously prosecute him, falsely arrest and imprison him and deprive him of liberty without due process of law. (Am. Compl. ¶ 156.) He also alleges she conspired to violate his right against self-incrimination and his right to a fair trial. (*Id.*) But Regusters must allege "an actual underlying constitutional violation" to succeed on a § 1983 conspiracy claim. *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020). And here, Regusters does not allege stand-alone claims for false arrest and imprisonment and deprivation of liberty without due process of law. Nor does he allege claims regarding his right against self-incrimination and his right to a fair trial.

9

Regusters fails to establish Gaines agreed with Nordo or Dove to violate his Fourth Amendment rights. He alleges the detectives "acted in concert" and "agreed" to initiate proceedings against him without probable cause. (Am. Compl. ¶¶ 156, 161.) But these allegations are conclusory. And the mere allegation that Gaines recklessly omitted certain facts from her probable-cause affidavit does not plausibly suggest Gaines reached an agreement with Nordo or Dove to maliciously prosecute Regusters.

Regusters's conspiracy claim under Pennsylvania law fails too. He must allege, among other things, that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). Because Regusters fails to allege an agreement, he cannot state a claim for conspiracy under Pennsylvania law.

C

Lastly, Regusters asserts Gaines failed to intervene to prevent his malicious prosecution. (Am. Compl. ¶ 167.)[4] Qualified immunity—which shields a police officer from money damages (and litigation)—bars this claim. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To overcome qualified immunity, Regusters must show Gaines violated a constitutional right and the unconstitutionality of her conduct was clearly established when she acted. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Regusters cannot show Gaines violated clearly established law. Though the Third Circuit Court of Appeals has "recognized a right to have a government actor intervene

---

[4] Regusters alleges Gaines failed to intervene to prevent his false arrest, malicious prosecution, false imprisonment and deprivation of liberty without due process of law. But to prevail on a failure-to-intervene claim, a plaintiff must show an underlying constitutional violation. *See Adams v. Selhorst*, 449 F. App'x 198, 204 (3d Cir. 2011); *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016). Again, Regusters fails to assert stand-alone claims for false arrest, false imprisonment and deprivation of liberty without due process of law.

when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention," the Court has "since concluded that" its "precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023).  Thus, it was not clearly established in 2012 that Regusters had a stand-alone right to intervention by a police officer to prevent malicious prosecution.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.